IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:22-CR-49-FL

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| ELGIN HART, ) | |
| ) | |
| Defendant. ) | |

    This matter comes before the court on defendant's motion to suppress (DE 68). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b), United States Magistrate Judge Robert B. Jones, Jr., entered a memorandum and recommendation ("M&R"), wherein it is recommended that the motion be denied (DE 70). Defendant filed objections to the M&R. In this posture, the issues raised are ripe for ruling. For the following reasons, defendant's motion is denied.

## STATEMENT OF THE CASE

    An indictment filed March 16, 2022, charges defendant with five offenses: three counts of distribution of a quantity of cocaine, and two counts of possession with intent to distribute five hundred grams or more of cocaine.

    Proceeding pro se, defendant filed the instant motion August 30, 2023, in which he seeks suppression of evidence he contends the government obtained in violation of the Fourth Amendment and statutory authority. Defendant relies upon various investigative documents and reports from law enforcement.

The government responded in opposition, relying upon 1) law enforcement's applications for the surveillance at issue and 2) the state court orders granting those applications. (See Gov's Resp. Def's Mot. Suppress ("Gov's Br.") (DE 69) Ex. A (DE 69-1) ("October Application"); id. Ex. B (DE 69-2) ("October Order"); id. Ex. C (DE 69-3) ("June Application"); id. Ex. D (DE 69-4) ("June Order")). The motions were referred to the Magistrate Judge, who entered M&R October 31, 2023. Defendant filed objections November 16, 2023, relying upon a record document from AT&T, and an addendum to his objections December 13, 2023, relying upon 1) call logs; 2) various law enforcement investigative reports; and 3) a piece of correspondence from defendant's former appointed attorney.

## STATEMENT OF FACTS

The court incorporates herein the facts and background as more particularly set forth in the M&R:

> On September 30, 2021, a cooperating source of information ("SOI") working with the Kinston Police Department Narcotics Unit ("KPD"), made a controlled purchase of 4.9 grams of cocaine from Hart. Shortly after the September 30 encounter, on October 4, an SOI working with the KPD also purchased 4.2 grams of cocaine from Hart. At this point, knowing that at least the first sale's details had been arranged by phone, KPD Detective John Delaney ("Delaney") applied for an electronic surveillance order from the North Carolina Superior Court. Specifically, Delaney sought authorization to install a pen register and trap and trace device on cellular phone (252) 382-5332, the number the SOI had used to contact Hart before the September 30 controlled purchase. Additionally, Delaney asked the court to authorize global-positioning system ("GPS") and geolocation monitoring for the same phone, including use of a cell-site simulator to track prospective location data.
>
> Delaney supported his request by mentioning both the recent controlled drug sales and Hart's Habitual Felon status in his affidavit to the court. Delaney's affidavit also explained that the investigation into Hart revealed that Hart travels to the Atlanta, Georgia area every 2-4 weeks, and that Atlanta is a known narcotics distribution center. The application notes that, because of these factors, the requested electronic surveillance would "allow law enforcement to identify other coconspirators, [] show the general geographic location of the target device before, during, or after the commission of a crime ... confirm[] or disprove[] alibis,

statements, or observations ... [and] aid law enforcement in tracking [] Hart's movements while law enforcement is actively investigating."

North Carolina Superior Court Judge Jeffrey Foster granted Delaney's request on October 5, and issued an order allowing the requested electronic surveillance of Hart's cellular phone. The order was not geographically limited in scope and applied to incoming calls, outgoing calls, and location data from within the previous 30 days, as well as within 30 days of issuance. It also identified certain information and records that law enforcement could request from Hart's cellular provider, like subscriber records, subject to the same 30-day limitation. Notably, the order specifically stated that it did not authorize the interception of the content of any telephone calls, text messages, or internet data produced by the target cellular device.

Law enforcement began GPS and geolocation monitoring on Hart's cellular phone around October 7, 2021. A week later, on October 14, the North Carolina State Bureau of investigations ("SBI"), working with the KPD, arranged another controlled purchase between Hart and an SOI, this time for 1.5 ounces of cocaine. Then, on October 19, using data obtained as a result of the October 5 order, law enforcement observed that, at around 8 p.m., Hart had travelled from the Kinston area to Lithonia, Georgia, which is located on the outskirts of Atlanta. Data indicated that Hart arrived in Lithonia at around 2 a.m. on October 20, and began his trip back to North Carolina at around 8 or 8:30 p.m. that same day.

Law enforcement planned to stop Hart in Kinston, North Carolina, after noticing that he returned to North Carolina around midnight on October 21. However, Hart travelled a different route back to North Carolina than the one he had used to go to Georgia. As a result, at approximately 2 a.m. on October 21, KPD contacted officers from the Greenville Police Department ("GPD") and instructed them to perform a traffic stop on Hart, who was driving through the area. The GPD officers were given the vehicle's model and license plate number, and after visually observing the brown Cadillac on the highway, they noticed that it was driving around 80 miles per hour in a 70-mile zone. Radar confirmed that the Cadillac was travelling 77 miles per hour, and Hart was stopped for speeding. At some point during the stop, a K-9 officer was dispatched to the scene, and the K-9 performed an open air sniff of the car and indicated the odor of narcotics. Officers then searched the vehicle's trunk and located one kilogram of cocaine and two pounds of marijuana. Following the search, officers also seized the cellular phone that was the basis of the October 5 court order, and arrested Hart.

In November 2021, Hart posted bond. Several months later, between April 1, 2022 and June 20, 2022, the KPD, through its SOIs, made three controlled purchases of narcotics from one Joseph Wilson. Importantly, during the investigation into Wilson, Delaney had identified a new phone number for Hart: (252) 521-3122. Using telephone toll analysis, Delaney determined that Wilson's and Hart's phones had been in communication. Based off this information, Delaney

3

used the License Plate Reader system to find that a 2007 Mercedes registered to Hart was again travelling to the Atlanta, Georgia area with some regularity.

Delaney applied for another court order authorizing the same kind of electronic surveillance as the October 5 order, with the only real difference being Hart's new cellular phone. The affidavit incorporated all the content provided in the application for the October 5 order, with additional details regarding Hart's activities following October 7; 2021 (e.g., the traffic stop and his correspondence with Joseph Wilson). North Carolina Superior Court Judge Clinton Rowe granted the application on June 27, 2022, authorizing the installation and monitoring of a pen register and/or trap and trace device, as well as GPS and geolocation monitoring for cellular phone (252) 521-3122. Like the previous order, the June 27 order was not geographically limited, however it applied to incoming calls, outgoing calls, and location data from within 60 days prior (as opposed to 30 days prior) to the order's issuance, as well as within 60 days after issuance. The order also requested the same types of documents and information as the October 5 order ( e.g., detailed subscriber records). And importantly, it contained the same disclaimer regarding the contents of the targeted device's communications.

Pursuant to the June 27 order, Delaney received both historical and prospective records for Hart's phone, including location data. Additionally, Delaney used the License Plate Reader system to find that Hart had travelled to Georgia on at least two occasions between May 2022 and June 27, 2022. Shortly thereafter, on June 30, the KPD and SBI learned that Hart was, once again, in Georgia. Law enforcement observed Hart reenter North Carolina and followed the car visually and electronically as it travelled through the state. As a result, officers were waiting near the Kinston city limits when Hart approached, and a marked patrol car pulled behind Hart's vehicle when it passed by. While following Hart in the patrol car, the officer observed Hart's vehicle behaving evasively and weaving in and out of traffic; at one point, it was almost bumper to bumper with other cars. Based on the officer's training and experience, he identified the traffic violation of following too closely, as well as a window tint violation, and initiated a traffic stop.

During the traffic stop, officers instructed Hart to step out of the vehicle while a K-9 performed an open-air sniff. The K-9 indicated the presence of narcotics, and at this point, Hart fled the scene on foot, approaching a Chick-fil-a. Officers tasered Hart before he could enter the restaurant and placed him in the back of a patrol car. Afterwards, when officers searched the vehicle, they discovered 705 grams of cocaine and 133 grams of MDMA pills in the glove box.

(M&R (DE 70) 2–6 (footnote omitted)).[1]

---

[1] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

# COURT'S DISCUSSION

A.  Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.  Analysis

The M&R identified three arguments by defendant in support of his motion. Defendant contends that "both the October 5 and June 27 electronic surveillance orders are (1) unlawful under Title I of the Electronic Communications Privacy Act, (2) unlawful under Title II of the Electronic Communications Privacy Act, and (3) unconstitutional under the Fourth Amendment." (M&R (DE 70) at 7). Upon careful review of the M&R and the objections, the court determines that the M&R correctly rejected each argument. In particular, the M&R determined properly that the surveillance orders are lawful under Title I because the government did not obtain the contents of any communications. (See M&R 8–10); 18 U.S.C. § 2703; United States v. Graham, 824 F.3d 421, 431–32, 432 n.11 (4th Cir. 2016) (en banc), abrogated on other grounds, 138 S. Ct. 2206 (2018). The M&R also properly determined that the surveillance orders are lawful under Title II

5

and the Fourth Amendment for the same reasons, and because the Fourth Amendment does not protect the type of information at issue here. (See M&R 11–17); 18 U.S.C. § 2703(d); see generally Smith v. Maryland, 442 U.S. 735 (1979) Therefore, upon de novo review, the court adopts the recommendation of the M&R. The court writes separately to address issues raised by defendant's objections.

Defendant raises several objections to the M&R. (See Objs. to M&R (DE 73) ("Objs.") 8–10). As the Magistrate Judge noted, the legal theories underlying several of defendant's arguments are opaque and difficult to construe. The objections largely consist of block quotations of statutory language and naked citations to exhibits. (See id.). Nonetheless, mindful of defendant's pro se status, the court attempts to liberally construe defendant's objections.

First, defendant objects to the M&R's conclusion that he lacks statutory standing to assert an argument under 18 U.S.C. § 3504. (See id. 8). However, whether defendant has statutory standing under this section depends on whether the government obtained any information unlawfully, as defined through a series of interlocking statutory definitions. See 18 U.S.C. §§ 3504, 2510(4), (5), (8). In essence, § 3504 forbids the use of evidence obtained unlawfully through the use of a device as defined in § 2510(5); that section proscribes using a defined device to "intercept" communications, which § 2510(4) in turn defines as acquiring a communication's "contents"; finally, § 2510(8) defines "contents" as "any information concerning the substance, purport or meaning of that communication." See generally 18 U.S.C. § 2510. Whether defendant has standing under § 3504 therefore depends on whether the government obtained evidence in violation of § 2510. Because statutory standing and the merits therefore merge, the court sets the standing argument aside and proceeds to defendant's other objections.

6

Second, defendant objects to the M&R's statement that neither court order here permitted police to review the content of defendant's communications, "whether prospective or historical[.]" (See Objs. 9). For support, Hart references a log sheet from AT&T, which shows unintelligible raw computer code. (See Objs. Ex. 1 (DE 73-2) 9–10). The court will assume without deciding that this raw data demonstrates that law enforcement received prospective data on defendant's communications, but this exhibit certainly does not demonstrate that law enforcement received any communication content, as discussed below. The court is willing to assume without deciding that this argument is technically correct, but it nonetheless does not provide grounds for suppression.

Third, defendant objects to the M&R's statement that the court orders here expressly prohibited the interception of the "content" of any communications. (See Objs. 9). But both orders include exactly this language. (See October Order ¶ 3; June Order ¶ 3). The court therefore rejects this argument.

Fourth, defendant objects to the Magistrate Judge's characterization of his arguments. (See Objs. 9–10). But these statements are just that: characterizations. (See M&R 11). This argument provides no ground on which to reject the M&R or grant defendant's motion.

Fifth, defendant objects to the M&R's rejection of his arguments under 18 U.S.C. § 2703. (See Objs. 9). The definitions established in 18 U.S.C. § 2510, and discussed above, apply to § 2703. See 18 U.S.C. § 2711(1). Specifically, defendant objects to the M&R's conclusion that 18 U.S.C. § 2703(a) and (b) have no relevance here, because the court orders did not authorize, and the government did not obtain, the content of any communications. The court concludes the M&R's analysis of this issue was correct.

18 U.S.C. § 2703(a) and (b) establish detailed procedures for obtaining the content of an electronic communication. In contrast, § 2703(d) sets out the far less onerous procedures required to access electronic communication records. See generally 18 U.S.C. § 2703.

The court orders at issue here expressly state that they do not authorize the acquisition of the contents of any communications. (See October Order ¶ 3; June Order ¶ 3). And the spreadsheet of calls defendant presents as an exhibit shows only incoming and outgoing phone numbers and call durations. (See Addendum to Obj. to M&R (DE 76) Ex. 2 (DE 76-2)).

This type of information is unprotected by the Fourth Amendment. See Smith, 442 U.S. at 742. Courts routinely recognize that under Smith's logic as applied to these statutes, this type of information constitutes communication records, not content. For example, in In re Zynga Privacy Litigation, 750 F.3d 1098 (9th Cir. 2014), the Ninth Circuit persuasively analyzed the text and structure of the statutes here, and concluded that these analytical tools illustrated that "content" refers to the message conveyed by a communication, not to characteristics of the message such as phone call origination and length. See id. at 1105–06.

Numerous courts and commentators have reached the same or similar conclusions. See, e.g., Graham, 824 F.3d at 431–32, 432 n.11; In re Google Inc. Cookie Placement Consumer Privacy Litigation, 806 F.3d 125, 135–37 (3d Cir. 2015); United States v. Myles, No. 5:15-cr-172-F, 2016 WL 1695076, at *5 (E.D.N.C. Apr. 26, 2016); Cook v. GameStop, Inc., --- F. Supp. 3d ---, 2023 WL 5529772, at *6 (W.D. Pa. 2023); Goldstein v. Costco Wholesale Corp., 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021); Vasil v. Kiip, Inc., No. 16-cv-09937, 2018 WL 1156328, at *2–3 (N.D. Ill. Mar. 5, 2018); Burns v. Heyns, No. 1:14-cv-733, 2015 WL 4391983, at *18 (W.D. Mich. July 15, 2015); see also Wayne R. LeFave, 2 Criminal Procedure § 4.4(d) (4th ed. 2023).

Finally, the government's surveillance applications explicitly stated that they were presented under the federal and state statutes governing pen register and trap-and-trace devices, which were the surveillance devices at issue in Smith and some of the other above cases. (See October Application; June Application (requesting authorization under 18 U.S.C. § 2703(d) and N.C. Gen. Stat. § 15A-260 et seq.)).

Because the court orders did not authorize, and the government did not collect, any communication content, the M&R's conclusion that § 2703(a) and (b) are not relevant here was correct. The court rejects defendant's argument to the contrary.

Sixth, defendant objects broadly to the M&R's general conclusion that the government did not obtain any evidence unlawfully. (See Objs. 10). This objection is general and conclusory, and does not "direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano, 687 F.2d at 47. Moreover, this argument is essentially a rehash of defendant's arguments about § 2703(a) and (b). As discussed above, the government did not obtain the content of any communication, and so these sections are inapplicable here.

Finally, defendant objects to the M&R's conclusion that the surveillance here was authorized under North Carolina law. (See Objs. 10). 18 U.S.C. § 2703(c) permits a government entity to require a communications service to provide communications records if the entity obtains a court order under § 2703(d). See id. § 2703(c)(B). In turn, subsection (d) authorizes court orders under state law if law enforcement offers specific and articulable facts showing that the contents of the records sought are relevant to a criminal investigation, and if the order is not independently prohibited under state law. See 18 U.S.C. § 2703(d). North Carolina law contains no independent prohibition on this type of order, and the North Carolina appellate courts have upheld such orders when supported by probable cause. See State v. Gore, 272 N.C. App. 98, 104–05 (2020). The

9

Case 4:22-cr-00049-FL-RJ   Document 77   Filed 02/13/24   Page 9 of 10

surveillance applications here extensively outlined probable cause, and defendant offers no argument to the contrary. (See generally October Application; June Application). Finally, defendant cites to North Carolina's definitional statute governing electronic surveillance; this statute is identical to its federal counterpart, and so the court concludes that the government did not obtain any communication content as defined under state law either. See N.C. Gen. Stat. § 15A-286.

The court has examined the rest of the M&R, to which defendant does not object, for clear error in light of the underlying record and briefing. See Diamond, 416 F.3d at 315. Finding none, the court adopts the remainder of the M&R.

## CONCLUSION

Based on the foregoing, the court ADOPTS the recommendation of the M&R (DE 70) and DENIES defendant's motion to suppress (DE 68).

SO ORDERED, this the 13th day of February, 2024.

_____
LOUISE W. FLANAGAN
United States District Judge